NO. **23-11778-CC**

**IN THE UNITED STATES COURT OF APPEALS
IN AND FOR THE ELEVENTH CIRCUIT**

Government Employees Insurance Co., GEICO Indemnity Company,
GEICO General Insurance Company, and, GEICO Casualty,

**Appellees-Plaintiffs**,

v.

The Right Spinal Clinic, Inc., Yunied MORA-JIMENEZ,
Alexis GARCIA-GAMEZ, and Lianny JIMENEZ-URDANIVA,

**Appellants-Defendants**.

_____

On Appeal from the United States District Court
in and for the Middle District of Florida
*Case No. 8:20-cv-00802-KKM-AAS*

_____

**INITIAL BRIEF for APPELLANTS**

_____

*Counsel for Appellants*:

**KELLY ARIAS
FBN: 0013980
The Evolution Law Group, PA
2700 Glades Circle
Suite 145
Weston, FL 33327
Tel. (954) 840-6665
Fax: (954) 840-6997
E-mail: kelly@theevolutionlawgroup.com**

i

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to F.R.A.P. 26.1(b) and 11th Cir. R. 26.1-1, counsel for the

Appellants certifies that the following individuals and entities (including trial judge,

attorney, association of persons, firm, law firm, partnership, and corporation that has

or may have an interest in the outcome of this action) may have an interest in the

outcome of this case:

### Trial Judges

1. The Honorable Kathryn Mizelle
   United States District Court Judge, Middle District of Florida
2. The Honorable Amanda Sansone
   United States Magistrate Judge, Middle District of Florida

### Parties

1. The Right Spinal Clinic, Inc., Appellant
2. Jimenez-Urdanivia, Lianny, Appellant
3. Garcia-Gamez, Alexis, Appellant
4. Mora-Jimenez, Yunied, Appellant
5. GEICO Casualty Co., Appellee
6. GEICO Indemnity Co., Appellee
7. GEICO General Insurance Co., Appellee
8. Government Employees Insurance Co., Appellee

**Attorneys and Law Firms**

1. Arias, Kelly, Esq., Counsel for Appellants

2. The Evolution Law Group, P.A., Counsel for Appellants

3. Baratta, Andrew, Esq., Counsel for Appellants

4. Baratta Law, LLC., Counsel for Appellants

5. Schurr, Kenneth, Esq. *Prior* Counsel for Appellants

6. The Law Offices of Kenneth B. Schurr, P.A. *Prior* Counsel for Appellants

7. Gershenoff, Max, Counsel for Appellees

8. Bernstein, Yonatan, Counsel for Appellees

9. Marino, John, Counsel for Appellees

10. Trowell, Lindsay, Counsel for Appellees

11. Wenger, Kristen, Counsel for Appellees

12. Rivkin Radler LLP, Counsel for Appellees

Pursuant to F.R.A.P. 26.1(a) Corporate Defendant/Appellant, The Right Spinal Clinic, Inc., states there is no parent corporation or publicly held corporation that own 10% or more of its stock.

However, and to undersigned's best knowledge, the Plaintiffs-Appellees in this matter, Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company, and GEICO Casualty Co. (non-governmental corporate parties), are wholly owned subsidiaries of GEICO Corporation, which is an indirectly wholly owned subsidiary of Berkshire Hathaway, Inc. which are publicly traded under stock ticker symbol BRK.B (Class A shares) and BRK.B (Class B shares).

Dated: September 4, 2023 _____/s/Kelly Arias_____
**KELLY ARIAS**
*Counsel for Appellants*

<u>**CERTIFICATE OF TYPE, SIZE AND STYLE**</u>

I hereby certify that this brief is typed and printed in 14-point Times New Roman.

Dated: September 4, 2023 _____/s/Kelly Arias_____
**KELLY ARIAS**
*Counsel for Appellants*

## STATEMENT OF ORAL ARGUMENT

Appellants, The Right Spinal Clinic, Inc., Lianny Jimenez-Urdaniva, Yunied Mora – Jimenez and Alexis Garcia Gamez, request oral argument in this case due to its magnitude and potential precedential effect on the citizens of the State of Florida. This appeal arises from a long and complex procedural posture in the District Court encompassing over 3 years of litigation, multiple dispositive legal issues, and policy issues that are of great significance to Florida policyholders and Florida Medical Providers. This circuit has yet to reach the point where precedent is established on specific factual scenario within this brief as the case law is embryonic. Due to the complexity of the issues presented, the conflicting case law on those issues, and the benefit to the Court of a more developed body of law on the issues, the Appellants believe that oral argument will assist the Court in its decision and yield a superior disposition. [1]

---

[1] The parties were not afforded the opportunity for oral argument on any motion filed in the District Court, excluding the preliminary pretrial conference and the final pre-trial conference. The parties did not present oral argument for GEICO's Motion for Summary Judgment or Right Spinal's Motion for Reconsideration. The Appellants believe that had oral argument ensued, a superior disposition would have ensued in the District Court.

# TABLE OF CONTENTS

**PAGE(S)**

Certificate of Interested Persons and Corporate Disclosure …………….…… ii, iii

Certificate of Type Size and Style …………….…………….….…..…….…….... iv

Statement of Oral Argument ……………….…………….……...…..……......…  v

Table of Contents …………………….….…………………….……….... vi, vii

Table of Citations …………..……………….…………….……….....….... viii

     Statutory Law………………….…….………….……….…….....…............ viii

     Case Law……………….……..……….…………….…….....…...…..... ix, x, xi

     Other…………………….………….………………………….xii

Preface…………………….……………….………………………….xiii

Statement of Jurisdiction ……………….……….………………................. xiv

Appellant's Initial Brief ………..…………………………….……....…..….. 1

     Statement of the Issues ………..……….….………………….…...…..….. 1

Statement of the Case and  Facts...…………………….……..…….…......… 2, 3

     A.      Course of Proceedings and Disposition Below …………….…. 4-14

     B.      Statement of Facts……………………………………….. … 14-16

Standards of Review ……………………….…….……………....…..……... 17

Summary of the Arguments ……..……………………..……….…….….... 18,19

Argument…………………….…………….………………….............….... 20

A. Florida Statute §627.736(1)(a) does not preclude an accredited Health Care Clinic from receiving reimbursement for health care services performed by an employee holding a massage therapy license. …………………23 -31

B. An employee of an Accredited Health Care Clinic, working under the direct supervision of a physician, is performing services 'incident to' the physician's license. ……………………………………………..32-48

C. The District Court erred in granting GEICO's FDUPTA claim after explicitly finding genuine issues of material fact as to the materiality and knowledge of the unlawful statements relied upon by GEICO…….48-51

Conclusion …………………..…………….……………………...…..… 52, 53

Certification of Word Count .…………………………………….………… 54

Certificate of Service ……..…………….…………………….….…......… 55

# TABLE OF CITATIONS

## Statutory Law

28 U.S.C. § 1291……………………………………………………………….xiv

28 U.S.C. §§ 1331 …………………………………………………………xiv

28 U.S.C. §§ 1332……………………………………………………...…..xiv

28 U.S.C. §§ 1367…………………………………………………………xiv

42 CFR §410.32…………………………………………………………..33,34

F.R.A.P. 26.1(a)……………………………………………………………iii

F.R.A. P. 26.1(b)………………………………………………………...ii

11th Cir. R. 26.1-1………………………………………………………..ii

Fed.R.Civ.P. 12(b)(6)……………………………………………………..4

Fed. R. Civ. P. 56(a), (c)……………………………………………………

Fla. Stat. §§458.3485(1), (2), (2)(d)……………………………………….38

Fla. Stat. §480.033(10)…………………………………………………25, 26

Fla. Stat. §480.041(2012)……………………………………………………32

Fla. Stat. 486.161(1)…………………………………………………………38

Fla. Stat. §627.732(11)………………………………………………………32

Fla. Stat. §§ 627.730-627.7405……………………………………14,23,32

Fla. Stat. §627.736(1)(a)…………………………………………………1,18,23

Fla. Stat. §627.736(1)(a)(1),(2)…………………………………………..24, 31, 32

Fla. Stat. §627.736(1)(a)(2)(e)…………………………………………...27

Fla. Stat. §627.736(1)(a)(5)………………………………………4, 25, 26, 27, 28

Fla. Stat. §627.736(5)(b)(1)(d)…………………………………………….32

Fla. Stat. §627.736(5)(h)……………………………………………………

## Case Law

American States Ins. Co. v. Kelley,

    446 So.2d 1085 (Fla. 4th DCA 1984)……………………………….……….27

Anderson v. Liberty Lobby, Inc.,

    477 U.S. 242 (1986)………………………………………………………….20

B&G Enters., Ltd. v. United States,

    220 F.3d 1318 (11th Cir. 2000)…………………………………....………17

Barnhart v. Sigmon Coal Co.,

    534 U.S. 438 (2002)………………………………………………….………30

Clark v. Coats & Clark, Inc.,

    929 F.2d 604 (11th Cir. 1991)…………………………………...…..20, 46

Cluck-U Chicken, Inc. v. Cluck-U Corp.,

    358 F. Supp. 3d 1295 (M.D. Fla. 2017)………………………...……20

Connecticut Nat. Bank v. Germain,

    503 U.S. 249 (1992)……………………………………………………25

Deere Constr. v. Cemex Constr. Materials Florida. LLC,

    2016 WL 8542540 (S.D. Fla. Dec. 1, 2016)………………….…………51

Erie R.R. v. Tompkins,

    304 U.S. 64 (1938)…………………………………………………..21

Forsythe v. Longboat Key Beach Erosion Control Dist.,

    604 So.2d 452 (Fla. 1992)…………………………………………..30

Gasparini v. Pordomingo,

    972 So.2d 1053 (Fla. 3d DCA 2008)…………………………...…27

Geico Gen. Ins. Co. v. Beacon Healthcare Ctr. Inc.

    298 So.3d 1235 (Fla. 3rd DCA 2020)…………………………39, 40, 41, 45

Gov't Emps. Ins. Co. v. Quality Diagnostic Health Care Inc.,

    2019 WL 11687706 (S.D. Fla. Dec. 20, 2019)…………………42, 43, 44,

Green v. State,

604 So.2d 471 (Fla. 1992)……………………………………….…26

Gupta v. Fla. Bd. of Regents,

212 F.3d 571 (11th Cir. 2000)…………………………………….…17

Holloman v. Mail-Well Corp.,

443 F.3d 832 (11th Cir. 2006)…………………………………………17

Holly v. Auld,

450 So.2d 217 (Fla. 1984)……………………………………….25

Horowitz v. Plantation General Hosp. Ltd. Partnership,

959 So.2d 176 (Fla. 2007)……………………………………..28

Industrial Fire & Cas. Ins. Co., v. Kwechin,

447 So.2d 1337 (Fla. 1983)…………………………………………29

James River Ins. Co. v. Ultratec Special Effects Inc,

22 F. 4th 1246 (11th Cir. 2022)……………………………………21

L.B. v. State,

700 So.2d 370 (Fla. 1997)………………………………………26

Lombardo v. Johnson & Johnson Consumer Cos.,

124 F.Supp.3d 1283 (S.D. Fla. Aug. 12, 2015)……………………..……51

Maddox v. State,

923 So.2d 442 (Fla. 2006)………………………………………30

Maor v. Dollar Thrifty Auto. Grp . Inc.,

2018 WL 4698512 (S.D. Fla. Sept. 30, 2018)……………………………50

McCarty v. Myers,

125 So. 3d 333 (Fla. 1st DCA 2013)………………………………29

Moore v. Morris,

475 So.2d 666 (Fla. 1985)………………………………………21

Progressive Select Ins. Co. v. Rafferty,

472 F. Supp. 3d 1141 (M.D. Fla. 2020)…………………………..21

Rowden v. Target Corp.,

2021 U.S. Dist. LEXIS 116025 (M.D. Fla. 2021) (Mizelle, J.)………..…46

Sconiers v. Lockhart,

    946 F.3d 1256 (11th Cir. 2020)……………………………………………21

Southern Owners Inc. Co. v. Hendrickson,

    299 So. 3d 524 (Fla. 5th DCA 2020)…………………………………41,42

Star Casualty Ins. Co. v. South Florida Pain and Rehabilitation of Hialeah, LLC.,

    28 Fla. L. Weekly Supp. 670a

    (17th Jud. Cir. App. September 24, 2020)………………34, 35, 36, 46, 47

State Farm Mut. Auto. Ins. Co. v. Performance Orthopedics & Neurosurgery LLC,

    315 F. Supp. 3d 1291 (S.D. Fla. 2018)…………………………………50

State Farm Mut. Auto. Ins. Co. v. Universal Med. Ctr. Of S. Fla., Inc.,

    881 So.2d 557 (Fla. 3rd DCA 2004)…………………36, 37, 38, 39, 46, 47

State v. Montello,

    867 So.2d 613 (Fla. 4th DCA 2004)………………………………………28

State v. Sullivan,

    95 Fla. 191 (Fla. 1928)……………………………………………………30

St. Charles Foods, Inc. v. America's Favorite Chicken Co.,

    198 F.3d 815 (11th Cir. 1999)………………………………………..17

Thomas v. George,

    525 F.3d 1107 (11th Cir. 2008)…………………………………….....17

Thornton v. E.I. Du Pont de Numours & Co.,

    22 F.3d 284 (11th Cir. 1994)…………………………………...…….17

Utility Air Regulatory Group, v. EPA,

    573 U.S. 302 (2014)…………………………………………....…..28

Van Pelt v. Hilliard,

    75 Fla. 792 (1918)……………………………………………...…….30

Whatley v. CNA Ins. Co.,

    189 F.3d 1310 (11th Cir. 1999)……………………………....…..17

**<u>Other</u>**

https://www.merriam-webster.com/dictionary/licensed.......................................26

https://www.merriam-webster.com/dictionary/massage.......................................26

https://www.merriam-webster.com/dictionary/therapist.....................................26

https://www.merriam-webster.com/dictionary/reimbursed..................................27

John F. Manning, The Absurdity Doctrine,

116 Harv. L. Rev. 2387 (2003)…………………………………………..30

In Re Motions to Certify Classes Against Court Reporting Firms for Charges
Relating to Word Indices,

715 F.Supp.2d 1265 (S.D. Fla. 2010)…………………………………….51

# **PREFACE**

Appellant The Right Spinal Clinic, Inc. will be referred to as "The Right Spinal Clinic"

Appellants, collectively, shall be referred to as "Right Spinal" or "the Appellants".

Appellees, Government Employees Insurance Co., Geico Indemnity Co., Geico General Insurance Company and Geico Casualty Co., will be referred to as "GEICO".

Docket entries will be referred to as (Doc. _____).

# <u>STATEMENT OF JURISDICTION</u>

The subject matter jurisdiction of the District Court was invoked pursuant to 28 U.S.C. §§ 1331, 1332, and 1367, because the matter in controversy exceeded the sum or value of $75,000.00, exclusive of interest and costs and was between citizens of different states.

The subject matter jurisdiction of the United States Court of Appeals for the Eleventh Circuit was invoked pursuant to 28 U.S.C. § 1291 as this is an appeal of an Order of Partial Summary Judgment, an Order on Denial of Reconsideration and an Order of Final Judgment which dispose of all claims with respect to all parties. (Doc. 292, 298, 350).

The Appellants filed a timely Notice of Appeal of the Final Judgment on May 24, 2023 (Doc. 354).

# I.    STATEMENT OF THE ISSUES

1.    Whether the District Court erred in granting summary judgment in favor of GEICO, by determining, as a matter of law, that Florida Statute §627.736(1)(a) precludes an accredited Health Care Clinic from receiving reimbursement for health care services performed by an employee holding a massage therapy license?

2.    Whether the District Court erred in its interpretation of whether an employee of a Health Care Clinic, working under the direct supervision of a physician, is performing services 'incident to' the physician's license when it granted summary judgment in favor of GEICO?

3.    Whether the District Court erred in granting GEICO's FDUPTA claim after explicitly finding genuine issues of material fact as to the materiality and knowledge of the 'unlawful' statements relied upon by GEICO?

## II.    STATEMENT OF THE CASE AND FACTS

This is an appeal of a partial summary judgment in favor of GEICO on its actions for unjust enrichment, declaratory judgment and Florida's Deceptive and Unfair Trade Practices Act (FDUPTA) (Doc. 292); an Order denying Right Spinal's Motion for Reconsideration (Doc. 298) and a final judgment in favor of Geico (Doc. 350).  GEICO's action for unjust enrichment sought reimbursement for payments made to Right Spinal, a Health Care Clinic, primarily based upon the premise that Right Spinal's employees were unsupervised by a physician. (Doc. 211, P.8, 13-15, 17, 48-49). GEICO's action for declaratory relief sought absolution from any contractual liability for the unpaid medical bills of the Appellants. (Doc. 211, P. 37-38). GEICO's FDUPTA echoed its claim for unjust enrichment and again sought reimbursement for the payments made to Right Spinal. (Doc. 211, 43-44). Furthermore, GEICO challenged the abilities of Right Spinals Medical Director, the efficacy of Right Spinal's treatment protocol, the validity of its examinations, the legitimacy of its diagnoses and the sufficiency of its medical records to support the diagnoses. (Doc. 211, P. 1-50).

The Appellants challenged GEICO's actions for unjust enrichment, declaratory judgment and FDUPTA through various motions and argued there were considerable genuine issues of material fact to prevent summary judgment in favor of GEICO. (Doc. 245). All motions on these counts were denied by the District

Court, except Appellants motion to strike Shatzer, thereafter partial summary judgment was entered in favor of GEICO, and final judgment was ultimately entered. (Doc. 292, 350). The denial of these motions and the grant of final judgment in favor of GEICO form the basis for the points raised on appeal.

### A. COURSE OF PROCEEDINGS AND DISPOSITION BELOW

#### 1. Geico's Complaints and Requested Relief

GEICO's initial Complaint sought reimbursement of monies paid to Right Spinal in Personal Injury Protection and Medical Payments benefits paid over the prior 5 years involving approximately 257 patients. (Doc. 1). The Complaint and subsequent amendments alleged that The Right Spinal was not entitled to the reimbursements for physical therapy services ("PTS") GEICO had paid or had pending to pay because the services were performed by "unsupervised massage therapists". (Doc. 1, 99, 211). In addition, GEICO alleged via multiple alternative theories, that Right Spinal had engaged in *inter alia* illegal or fraudulent conduct or unjust acts or deceptive and unconscionable acts by submitting bills to GEICO for treatment that was not provided or not medical necessary or not lawfully provided and had induced GEICO to pay these medical bills. (Doc 211, P. 39-49). All the actions asserted by GEICO arose from medical treatment provided to GEICO policy holders for motor vehicle accident-related injuries and the billing for those services pursuant to Florida's No-Fault law and the contracts of insurance. (Doc 211, Pg 1-2).

The Appellants filed a motion to dismiss GEICO's initial complaint pursuant to Fed.R.Civ.P. 12(b)(6) (Doc. 28); which the Appellants thereafter amended. (Doc. 30).

On August 14, 2020, GEICO filed an amended complaint against the Appellants. (Doc. 99). On September 14, 2020, the Appellants filed a motion to dismiss GEICO's amended complaint. (Doc. 114) (ultimately denied by the District Court (Doc. 210). On September 14, 2020, the Appellants also filed a Motion to Strike Allegations in the Amended Complaint as the paragraphs identified were immaterial, impertinent and impermissibly prejudicial to the claims alleged. (Doc. 115). Nearly every single paragraph in GEICO's Initial, Amended and Second Amended Complaint were intentionally inflammatory and written to create an interrorum effect according to GEICO's lead counsel (Doc. 272 See book of Max). On June 14, 2021, the District Court denied the Motion to Strike due to the Plaintiff's claims centering around fraudulent conduct. (Doc. 209)

On September 27, 2021, GEICO filed a Second Amended Complaint (Doc. 249) to which the Appellants filed its answer and affirmative defenses. (Doc. 254).

**2.    The Motion to Strike GEICO's witness Matthew Shatzer, D.O. and Order Granting the Motion to Strike**

On August 20, 2021, GEICO filed its notice of exhibits in support for motion for summary judgment and identified its 'expert' witness as Matthew Shatzer, D.O. ("Shatzer") (Doc. 231). Throughout the entire course of the proceedings in the District Court, GEICO only identified and relied upon two witnesses, Shatzer and its Corporate Representative, Victoria Spring. The only medical testimony GEICO

had to support any of its illegal, fraudulent conduct *inter alia* allegations, 148 paragraphs out of the 176 paragraph second amended complaint, was the 'testimony' of Shatzer. (Doc. 211).

On January 21, 2022, the Appellants filed its Motion to Strike Matthew Shatzer, D.O. The Appellants alleged Shatzer himself did not author a single word of the report, which was written entirely by GEICO's lawyers. Shatzer admitted in his deposition that every single word of his report was written by the lawyers at Rivkin, Radler and further, that allowing them to do so has been his practice in nearly one hundred cases that Rivkin Radler has retained him on during the past 10 years. (Doc.274, P. 2-3). Shatzer's April 14, 2021, report, was not his report in any way, shape or form. It was an identical copy of a report submitted on December 28, 2020, by James Dillard, M.D. in Geico v. Ceda Orthopedics et al, where GEICO was represented by Max Gershenoff. (Doc. 274 P. 4). Even more astounding, is both the Dillard report and the Shatzer copy of the Dillard report were copies of a book and paragraphs contained therein, written by lead counsel Max Gershenoff on June 7, 2019, prior to both 'reports. (Doc. 274 P. 5-8, Doc. 272 P. 4-7). This led the District Court to Grant Right Spinal's Motion to Strike, on June 14, 2022, stating the GEICO attorneys wrote the Report from beginning to end (Doc. 291 P. 6). The Report borrows, without attribution, from a book written by Max Gershenoff and uses identical verbiage from the book (Doc. 291 P. 11). The Report recounts paragraphs

word for word from the original complaint. (Doc. 291 Pg. 11, Doc. 1 ¶470, Doc. 274-1 P. 9-10). The District Court made the finding that GEICO's failure to comply with Rule 26 was neither justified nor harmless. GEICO's use of a template report with only minimal tailoring to this case and minimal involvement from its expert obscures the factual issues, requires Defendants to hire countering experts, and raise significant questions "as to whose opinions" the Report really contains – Shatzer's or GEICO's attorneys". (Doc. 291 P. 13).

### 3. The Motions for Summary Judgment

On September 27, 2021, GEICO filed a Second Amended Complaint (Doc. 249) to which the Appellants filed its answer and affirmative defenses. (Doc. 254).

On January 20, 2022, the Appellants filed a motion for judgment as a matter of law pursuant to Florida Anti-SLAPP Statute. (Doc. 272).

On January 21, 2022, GEICO filed a motion for summary judgment against the Appellants (Doc. 278) to which the Appellants filed a response. (Doc. 283). GEICO's summary judgment relied upon Shatzer's report throughout. The summary judgment was not modified after the striking of Shatzer and the flagrant unsupported allegations remained intact. (Doc. 278).

In a nutshell, the premise of GEICO's summary judgment on unjust enrichment, FDUPTA and declaratory judgment was simple, to wit: GEICO should not have to pay for treatment performed by *unsupervised* massage therapists and the

services were not supervised simply because Dr. Merced's name was placed in box 31 of the HCFA bills. The response from Right Spinal was yes, we employ massage therapists at the facility and yes, Dr. Merced's name was in Box 31 of the HCFA's. However, the massage therapists are supervised, by Right Spinal's 3 medical physicians and 1 chiropractic physician; the services were billed incident to the doctors' licenses; Dr. Merced's name was in Box 31 but the other doctor's names were in Box 17; and every single bill was submitted to GEICO with a doctor's report and a therapy report listing the name of the therapist. GEICO's allegation of non-supervision or unlawfulness could not be proven simply because of a prejudicial ageism allegation against the Medical Director and because his name was in one box out of 37 boxes on the HCFA.

Legally an issue of materiality, supervision, substantial compliance, lawfulness were all issues for the jury and extreme genuine issues of material fact existed. Despite these arguments, the District Court granted partial summary judgment in favor of GEICO on these claims. (Doc. 292).

The Court reasoned that the statute prohibits billing for an LMT's services, thus GEICO was entitled to summary judgment on the unjust enrichment claims as it relates to the physical therapy services. (Doc. 292 P. 7) Right Spinal was not entitled to PIP reimbursement for services that its LMT's provided and GEICO is not obligated to pay outstanding bills for these services. (Doc. 292 P. 23). Right

Spinal engaged in deceptive or unfair practices by violating the No Fault Law and submitting bills to GEICO that it had a statutory right to deny. Specifically, Right Spinal submitted bills for services that LMT's performed while representing Merced performed or directly supervised the treatment. (Doc. 292 P. 24).

Although the Court stated it would not rely upon Shatzer's report, the paragraphs that relied on his testimony still remained in the MSJ and it was extremely difficult to identify the 'evidence' GEICO had remaining after its only medical expert was stricken. The easiest way to see the affect the order striking had on the case is by comparing the 2nd amended complaint and the 3rd amended complaint. The District Court specifically instructed GEICO to remove all allegations and counts Judge Mizelle did not grant summary judgment on. The difference was astonishing.

Notably, and unsurprisingly given GEICO's scheme to terrorize medical providers, GEICO's January 21, 2022, motion for summary judgment did not move for judgment on 4 out of its 7 counts. GEICO did not move for summary judgment on ANY of the counts alleging fraudulent conduct, RICO claims, common law fraud *inter alia*. These counts were apparently: the justification for the interrorum language contained in GEICO's first 3 complaints; the rationale underlying the Court's June 14, 2021, Order denying Right Spinal's Motion to Strike impertinent and scandalous paragraphs (Doc. 209) and were also apparently filed due to

'Shatzer's opinions' and 'report' which was written entirely by GEICO's counsel and stricken by the District Court on June 14, 2022.

On July 6, 2022, the District Court denied the Appellants' motion for summary judgment (Doc. 272) and granted, in part, GEICO's motion for summary judgment (Doc. 278). Doc. 292.

### 4.    The Motion for Reconsideration

On July 21, 2022, the Appellants filed a motion to reconsider (Doc. 294) the District Court's July 6, 2022, order. Right Spinal contended the District Court made manifest errors of law and fact in its July 26, 2022, order. Appellants contended the District Court's opinion stretched the cloth of the arguments presented by GEICO, by determining that 'incident to' services or direct supervision was irrelevant and that Right Spinal's employees held no other licenses. (Doc. 292). GEICO never made these arguments in either of its 3 complaints or its motion for summary judgment. Conversely, GEICO had conceded that "incident to" physical therapy services provided under the direct supervision of a licensed physician are reimbursable under the PIP statute. (Doc. 245-3, P. 89)[2] GEICO had also conceded

---

[2] So based on my understanding of the law, and I am not an attorney, but for—it is perfectly legitimate for a massage therapy, therapist, licensed massage therapist to complete physical therapy, but they have to have direct supervision. If they don't have direct supervision, then they're just completing massage therapy which is, you know, not able to be billed under no-fault. Deposition of Victoria Spring, GEICO's Corporate Representative. (Doc. 245-3, P. 89)

that at least one of the massage therapists held an additional license in its second amended complaint. (Doc. 211. P. 5).

Despite these concessions, the District Court found the employees of Right Spinal "held no other licensure" (Doc. 292 P. 3) and relied on the Declaration of Victoria Spring for this assertion. (Doc. 277-1 P. 6). However, there is no mention by Spring on page 6 or paragraph 6 regarding the licenses held by the LMTs. This is the only evidence the District Court relied upon in making this determination. The parties stipulated the LMT's were not physical therapists, chiropractors, or physicians, but *never* stipulated the LMT's held no other licensure. Both parties have copies of these additional licenses because of the discovery and AHCA files requested in this case. (Doc. 275). Each employee of Right Spinal who held a massage license *also* held a chiropractic assistant and/or medical assistant license. (Doc. 294 P. 9. Doc. 211 P. 5.) This is an error of fact that dramatically impacted the Grant of partial summary judgment on all three counts and is harmful error.

The District Court further determined the Defendants never argued that the services were merely incident to a licensed doctor's practice of his profession. (Doc. 292 P. 11). Right Spinal clearly described the three different types of supervision over "incident to" services "such as the therapies at issue in this case" in its response to GEICO's motion for summary judgment. (Doc. 245 P. 7-8). Regardless, the parties never contested this issue. The concessions of GEICO and Right Spinal's

position was if the massage therapists were directly supervised, they would be providing services 'incident to' a physician's license and thus, would be entitled to reimbursement. (Doc. 245-3, P. 89). The *only* issue, at any time, was whether these employees were directly supervised. (Doc. 294 P. 8-11, Doc. 245 P. 7-8). This is an error of fact and law. [3]

The District Court found it an issue of fact for the jury to determine whether Dr. Merced's name in Box 31 was a material representation (Doc. 292, P. 19); A material fact as to Right Spinal's knowledge of the falsity of this representation (Doc. 292, P. 24) and a material fact as to whether a reasonable insurance company would attach importance to Dr. Merced's name in Box 31. (Doc. 292, P 20-23). Despite these findings, the District Court granted summary judgment on GEICO's FDUTPA claim by stating "Right Spinal submitted PIP bills for services LMTs performed, while representing that Merced performed or directly supervised every treatment. And yet, such bills are not entitled to PIP reimbursement and Defendants admit that Merced was not always present to directly supervise treatments at is billing represents." (Doc. 292, P. 24). This is an error of fact and law. The error of fact relates to the additional qualifications of the LMTs. The error of law is that a FDUTPA claim can be proved by any statement in the context of a consumer transaction which later turns out to be technically false, regardless of its materiality,

---

[3] Additionally, "incident to" a physician's practice presupposes supervision by the physician.

regardless of the knowledge of the Appellant, and regardless of the statement's import to the transaction at issue.

On August 15, 2022, the District Court denied the Appellants' motion to reconsider. (Doc. 298).

### 5. The Motion to Amend and Subsequent Entry of Final Judgment

On April 10, 2023, the District Court entered an endorsed order after which GEICO would move to amend its second complaint. (Doc 344). In that endorsed order the District Court specifically stated, "as GEICO well knows… it must scrupulously remove any theories I have not granted summary judgment on when making that motion." Id.

On April 26, 2023, GEICO filed an unopposed Third Amended Complaint. Doc. 349. GEICO's 4 'fraudulent counts' were not included in GEICO's Third Amended Complaint. (Doc. 349). GEICO's Second Amended Complaint was 51 pages long with 172 paragraphs. (Doc. 211). GEICO's Third Amended Complaint was 10 pages long with 46 paragraphs of which 14 assert allegations and 19 assert causes of action. All the interrorum language was magically removed.

On April 26, 2023, the District Court entered an Order Granting the Third Amended Complaint. (Doc. 348). In its Order the Court definitively stated, "Because it is undisputed that all bills for physical therapy services submitted by Right Spinal

to GEICO were done by licensed massage therapists, for shorthand, the physical therapy bills were referred to as non-reimbursable, even though it was a problem because of *who* performed the services, not the services themselves." (Doc. 348 P. 2).

GEICO's third amended complaint eventually, without rigamarole, clearly identified the only issue in this case; to wit: the physical therapy services were performed by unsupervised massage therapists. (Doc. 349 P. 5, ¶ 21).

On April 27, 2023, the District Court entered its Final Judgment in the matter based upon the third amended complaint. (Doc. 350).

On May 24, 2023, Appellant appealed to the District Court's July 6, 2022, Order (Doc. 292); its August 15, 2022, Order denying Defendants' Motion for Reconsideration. (Doc. 298); and, its April 27, 2023, Final Judgment (Doc. 350), to which the Appellant's Initial Brief follows.

## B.   STATEMENT OF FACTS

GEICO sells insurance policies to residents in the State of Florida for Personal Injury Protection ("PIP") Coverage. PIP coverage is mandatory and is regulated by the Florida Motor Vehicle No-Fault Law, Fla. Stat. §§ 627.730-627.7405. The insurance policies sold to the patients listed in GEICO's complaint provided $10,000.00 of statutory no-fault coverage. (Doc. 1. Ex. A). 275 patients were involved in motor vehicle accidents at some point between November 2017 and

September 2021. They all sought medical treatment for their accident-related injuries at The Right Spinal Clinic, Inc. *inter alia*.

Right Spinal Clinic, Inc., is a medical services provider that frequently provides physical therapy modalities and rehabilitative treatment to individuals who have been injured in automobile accidents. Right Spinal's services included initial examinations, follow-up examinations, and simple physical medicine modalities. (Doc. 277-1 P 4). The Right Spinal Clinic, Inc. also provides General Medicine and prescribes outpatient prescription medication. (Doc. 245 P.5). The Right Spinal Clinic, Inc. holds a full Health Care Clinic License pursuant to and is also fully accredited by The Joint Commission. (Doc. 232 P. 2, Doc. 245, Ex. D)

Pursuant to the patients' contracts of insurance, medical bills for Right Spinal Clinic, Inc.'s treatment were submitted to GEICO. (Doc. 275 P. 2, Doc. 272-7 P 81). Over the course of three years, GEICO made payment on these bills. Each medical bill, or HCFA form was submitted to GEICO in conjunction with examination reports and therapy notes indicating the name of the medical director, supervising physician and therapist. (Doc. 245. P. 13-15).

Three employees of Right Spinal who were licensed massage therapists (LMTs)–Alexis Garcia-Gamez, Mignelis Veliz Sosa, and Yulieta Perez Rodriguez provided the physical modality services, which were billed to GEICO. (Doc. 277-1 P. 6). In addition, it is undisputed that Mr. Gamez held licenses as both a registered

chiropractic and medical assistant, Ms. Perez-Rodriguez held a license as a chiropractic assistant, and Ms. Veliz Sosa held a license as a registered medical assistant. (Doc. 294. P. 9 citing Deposition of Mr. Gamez at pg. 13-14, Deposition of Ms. Perez Rodriguez at page 10 and Ms. Spring's Declaration (See Doc. 277-1, 11 & 25)). These physical modalities were all performed under the direct supervision of Right Spinal's four physicians, Doctor Luis Merced, M.D., Doctor Kendrick Eugene Duldulao, M.D., Doctor Stephen Diamantides, D.C., and Doctor Victor Silva, M.D. (Doc. 277-1 at 4-5).

## C.    STATEMENT OF STANDARD OF REVIEW

**This Court of Appeals' Standard of Review upon a District Court's Grant or Denial of Summary Judgment**

This Court of Appeals "reviews the district court's grant of summary judgment *de novo*, <u>Holloman v. Mail-Well Corp.</u>, 443 F.3d 832, 836 (11th Cir. 2006); *accord*, <u>Thomas v. George</u>, 525 F.3d 1107, 1109 (11th Cir. 2008), without deference to the district court's determination. <u>B&G Enters., Ltd. v. United States</u>, 220 F.3d 1318, 1322 (11th Cir. 2000); <u>Thornton v. E.I. Du Pont de Numours & Co.</u>, 22 F.3d 284, 288 (11th Cir. 1994). A denial of a motion for judgment as a matter of law is also *de novo*. <u>Gupta v. Fla. Bd. of Regents</u>, 212 F.3d 571, 582 (11th Cir. 2000). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. <u>Whatley v. CNA Ins. Co.</u>, 189 F.3d 1310, 1313 (11th Cir. 1999). The Court must view all evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party. <u>St. Charles Foods, Inc. v. America's Favorite Chicken Co.</u>, 198 F.3d 815, 819 (11th Cir. 1999).

### III.   SUMMARY OF THE ARGUMENT

The District Court erred in granting GEICO's partial summary judgment which led to the entry of final judgment. The issue in this case as framed by GEICO's Third Amended Complaint is whether Appellants bills submitted to GEICO were lawfully provided and reimbursable if they were performed by unsupervised massage therapists. (Doc. 349. P. 21).

The argument is simple. If the employees of Right Spinal were directly supervised by a physician and thus, providing services 'incident to' the physician's license, Right Spinal is entitled to reimbursement. If the employees of Right Spinal were not directly supervised by a physician, they were merely providing massage therapy services, and thus, Right Spinal is not entitled to reimbursement.

Florida Statute §627.736(1)(a) does not automatically preclude an accredited Health Care Clinic from receiving reimbursement for health care services performed by an employee holding a massage therapy license. A Health Care Clinic is statutorily entitled to reimbursement for lawfully rendered services, as a matter of law.

An employee of an Accredited Health Care Clinic, working under the direct supervision of a physician, is performing services 'incident to' the physician's license and the Health Care Clinic is entitled to reimbursement for these services.

The Court relied on an indisputably incorrect fact, that Appellant LMTs were not otherwise qualified to serve as medical assistants or chiropractic assistants, the existence of which creates a genuine issue which precludes summary judgment.

The Court's grant of summary judgment as to the FDUTPA claim is a manifest error of fact and law. The mistake of fact relates to the additional qualifications of the LMTs. The mistake of law is the Court's novel holding that a FDUTPA claim can be proven by any statement in the context of a consumer transaction which later turns out to be technically false, regardless of its materiality, regardless of the knowledge of the Defendant, and regardless of the statement's import to the transaction at issue.

# IV.    ARGUMENT

The District Court erred in granting partial summary judgment in favor of GEICO because genuine issues of material fact existed as to supervision, lawfulness and the materiality of statements made. This Court of Appeal's reversal of the District Court July 6, 2022, Order granting summary judgment on Counts I (Declaratory Judgment), IV (Unjust Enrichment) and VII (FDUTPA) is warranted due to manifest harmful legal and factual errors.

Motions for summary judgment should only be granted when the pleadings, depositions, interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Cluck-U Chicken, Inc. v. Cluck-U Corp., 358 F. Supp. 3d 1295, 1303 (M.D. Fla. 2017); Fed. R. Civ. P. 56(a), (c). A fact is material if it might affect the outcome of the suit. *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The movants bear the initial burden of informing the court of the basis for its motion and identifying those parts of the record that show an absence of a genuine issue of fact. *See* Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). When that burden is met, the burden shifts to the nonmovant to prove that there is a genuine issue of fact that precludes summary judgment. Id. In reviewing the

evidence, the Court draws all legitimate inferences in the nonmoving party's favor.[4]

*See* <u>Sconiers v. Lockhart</u>, 946 F.3d 1256, 1263 (11th Cir. 2020). [W]hen conflicts arise between the facts evidenced by the parties, [the court] credit[s] the nonmoving party's version." <u>Progressive Select Ins. Co. v. Rafferty</u>, 472 F. Supp. 3d 1141, 1145 (M.D. Fla. 2020). "If the evidence raises any issue of material fact, if it is conflicting, if it will permit different reasonable inferences or if it tends to prove issues, is should be submitted to a jury as a question of fact…" <u>Moore v. Morris</u>, 475 So.2d 666. 668 (Fla. 1985).

Moreover, it is well established that the law of a State, statutory and case law, governs diversity actions. <u>Erie R.R. v. Tompkins</u>, 304 U.S. 64 (1938).

> Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in a case is the law of the State. And whether the law of the State shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern. There is no federal general common law.

<u>Id</u>. at 78. Justice Fields eloquently and altruistically explained the necessity of adhering to this rule and the deference that must be provided to state court decisions when he protested ignoring the Ohio servant liability law:

---

[4] The District Court stated "Because the parties have filed cross motions for summary judgment, the Court views the facts in the light most favorable to the nonmoving party on each motion. *See James River Ins. Co. v. Ultratec Special Effects Inc,* 22 F. 4th 1246, 1251 (11th Cir. 2022)" (Doc. 292 P. 2). However, the Appellant did not file a cross motion for summary judgment. The Appellant filed an Anti-SLAPP motion, based on different law, which was ultimately denied. The Appellant merely filed a response to GEICO's motion for summary judgment, which is the subject of this appeal.

I am aware that what has been termed the general law of the country—which is often little less than what the judge advancing the doctrine thinks at the time should be the general law on a particular subject – has been often advanced in judicial opinions of this court to contract a conflicting law of a State. I admit that learned judges have fallen into the habit of repeating this doctrine as a convenient mode of brushing aside the law of a State in conflict with their views. And I confess that, moved and governed by the authority of the great names of those judges, I have, myself, in many instances, unhesitatingly and confidently, but I think now erroneously, repeated the same doctrine.

But, notwithstanding the great names which may be cited in favor of the doctrine, and notwithstanding the frequency with which the doctrine has been reiterated, there stands, as a perpetual protest against is repetition, the Constitution of the United States, which recognizes and preserves the autonomy and independence of the State – independence in their legislative and independence in their judicial departments. Supervision over either the legislative or the judicial action of the States is in no case permissible except as to matters by the Constitution specifically authorized or delegated to the United States. Any interference with either, except as thus permitted, is an invasion of the authority of the State and, to that extent, a denial of its independence.

Id. at 79. The District Court did not follow the statutory language of Florida Statute §672.736 or existing Florida case law, on the issues of supervision, substantial compliance and lawfulness. Instead, the court decided to impose its own opinion and stretched the cloth of the legal arguments presented by both parties which imposed a new obligation for a Florida Health Care Provider, not previously addressed by

any Florida State Court. Also, as consistently argued to the District Court during the pendency of this action, genuine issues of material fact existed as to supervision, lawfulness, substantial compliance and materiality of statements made by Right Spinal.

**A.** **Florida Statute §627.736(1)(a) does not preclude an accredited Health Care Clinic from receiving reimbursement for health care services performed by an employee holding a massage therapy license.**

Right Spinal is entitled to reimbursement of medical services provided to GEICO's insureds, as a matter of law. Who may be reimbursed under the Florida No Fault Law is separate and distinct from an analysis of lawfully rendered treatment. [5]

Florida's Motor Vehicle No-Fault Law requires that automobile insurers compensate their insured clients for injuries sustained in car accidents. *See* §§ 627. 730-627.7405, Fla. Stat. That compensation is called Personal Injury Protection (PIP) benefits. *See* § 627.736(1), Fla. Stat. In sum, an insurance policy issued pursuant to this subsection must provide eighty percent of all reasonable expenses for medically necessary treatment up to $10,000 in benefits to an 'injured party.'

Since 1979, Florida Statute §627.736(1)(a) has delineated the specific category of provider who is entitled to reimbursement and the type of medical benefits that are reimbursable.

---

[5] See Appellants argument for this analysis in subjection IV, B.

<u>Providers</u>

The providers who may currently seek reimbursement are: a physician; dentist; chiropractic physician; advanced practice registered nurse; supervised physician's assistant; hospital; an ambulatory surgical center; an entity wholly owned by a physician, chiropractic physician or advanced practice registered nurse, or a dentist or the spouse, parent, child or sibling of those practitioners; a physical therapist; a licensed accredited health care clinic; and a licensed health care clinic with a medical director who provides certain medical specialties. Fla. Stat. §627.736(1)(a)(1),(2).

Providers who may not seek reimbursement are: a licensed massage therapist or licensed acupuncturist. Fla. Stat. §627.736(1)(a)(5).

<u>Medical benefits</u>

The types of reimbursable medical benefits are medically necessary: medical; surgical; X-ray; dental; rehabilitative services; prosthetic devices; ambulance; hospital; nursing; initial and follow up services that are lawfully provided, supervised, ordered or prescribed by: physicians, chiropractic physicians, dentists, or advanced practice registered nurse. Fla. Stat. §627.736(1)(a)(1),(2).

The types of non-reimbursable medical benefits are massage therapy[6] and acuphuncture. Fla. Stat. §627.736(1)(a)(5).

In these statutes Health Care Clinics and a Licensed Massage Therapists are listed separately. In these statutes rehabilitative services and massage therapy are listed separately.

Right Spinal contends the statutes are clear and unambiguous. However, a statutory construction analysis is appropriate to prove this contention. As with all statutory construction cases the analysis begins with the language of the statute. "We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." Connecticut Nat. Bank v. Germain, 503 U.S. 249, 253-254 (1992). "When the words of the statute are unambiguous, then this first canon is also the last: 'judicial inquiry is complete.' Id. See also Holly v. Auld, 450 So.2d. 217, 219 (Fla. 1984)(explaining that where a statute is clear and unambiguous, there is no occasion to rely on the rules of statutory construction; the statute instead must be given its plain and ordinary meaning). There is no doubt that the legislature intended to prohibit LMTs from receiving pip reimbursements. The statute is clear in that regard. Therefore, the only question is

---

[6] Massage therapy is defined in Fla. Stat. §480.033, "Massage therapy" means the manipulation of the soft tissues of the human body with the hand, foot, knee, arm, or elbow, regardless of whether such manipulation is aided by hydrotherapy, including colonic irrigation, or thermal therapy, any electrical or mechanical device, or the application to the human body of a chemical or herbal preparation.

whether Right Spinal Clinic, Inc., who requested reimbursement, fits within the meaning of "licensed massage therapist" in Fla. Stat. § 627.736(1)(a)(5). "Licensed massage therapist" must be interpreted by its ordinary meaning since the PIP statute does not define the phrase. *See* Green v. State, 604 So.2d 471, 473 (Fla. 1992) ("we give statutory language its plain and ordinary meaning, unless words are defined in the statute . . .."). The ordinary meaning is found in a dictionary. *See also* L.B. v. State, 700 So.2d 370, 372 (Fla. 1997).

The term "licenses" is defined by the dictionary as "having a valid license required to engage in a particular business, occupation, or activity." https://www.merriam-webster.com/dictionary/licensed. "Massage" is defined as "manipulation of tissues (as by rubbing, kneading, or tapping) with the hand or an instrument for relaxation or therapeutic purposes." https://www.merriam-webster.com/dictionary/massage. "Therapist" is defined as "an individual specializing in the therapeutic medical treatment of impairment, injury, disease or disorder." https://www.merriam-webster.com/dictionary/therapist.

The dictionary meaning of "licensed massage therapist" is consistent with its statutory definition, to wit: "a person licensed as required by this act, who performs massage therapy, including massage therapy assessment, for compensation." Fla. Stat. §480.033(10).

In addition, the term "reimbursed" is defined by the dictionary as "to pay back someone: Repay" https://www.merriam-webster.com/dictionary/reimbursed.

Right Spinal Clinic, Inc. is not a licensed massage therapist. It is an accredited health care facility with the Joint Commission on Accreditation of Healthcare Organizations (JCAHO), entitled to reimbursement. Fla. Stat. §627.736(1)(a)(2)(e). (Doc. 232 P. 2, Doc. 245, Ex. D). Moreover, Right Spinal Clinic, Inc. is a Health Care Clinic licensed under Fla. Stat. Chapter 400, Part X, who has a medical director, and provides general medicine, physical medicine, physical therapy modalities, physical rehabilitation modalities, and prescribes outpatient prescription medication. (Doc. 232 P. 2, Doc. 245, Ex. D). This secondary licensing of The Right Spinal Clinic, Inc. provides a second right to reimbursement. Fla. Stat. §627.736(1)(a)(2)(e)(III).

Corporations are legal entities separate and distinct from the persons comprising of them. *See* American States Ins. Co. v. Kelley, 446 So.2d 1085, 1086 (Fla. 4th DCA 1984); Gasparini v. Pordomingo, 972 So.2d 1053, 1054 (Fla. 3d DCA 2008). As such, it does not matter who Right Spinal Clinic, Inc. employs as it is a separate legal entity, and must be recognized as such regardless of who owns it or who it employs. *See* Id.

Florida Statute §627.736(1)(a)(5) does not say that an accredited, incorporated, health care clinic that is licensed under Part X, Chapter 400 cannot be

reimbursed. The statute only says that a licensed massage therapist may not be reimbursed for medical benefits. Fla. Stat. §627.736(1)(a)(5). A massage therapist did not seek reimbursement and did not submit *any bills* to GEICO. The Right Spinal Clinic, Inc. sought reimbursement for physical therapy modalities pursuant to Fla. Stat. §627.736(1)(a)(1),(2).[7]

Moreover, this is not an occasion where context defeats ordinary meaning, such that a contextual analysis need occur. *See* Horowitz v. Plantation General Hosp. Ltd. Partnership, 959 So.2d 176, 182 (Fla. 2007), *see also* Utility Air Regulatory Group, v. EPA, 573 U.S. 302, 320 (2014). The specific context in subsection (1)(a)(5) does not give 'licensed massage therapist' a more expansive meaning to include 'an incorporated health care clinic who employs LMT's'. If this were the case, it would yield a result where a licensed clinic who employs unlicensed assistants could receive reimbursements but a clinic that employs licensed massage therapists who work as assistants, could not. The PIP statute cannot be read to yield inconsistent results. *See* State v. Montello, 867 So.2d 613, 615 (Fla. 4th DCA 2004)(explaining that, when necessary, all parts of a statute should be read together for consistency). This reading would also raise questions of constitutionality that

---

[7] The statute only uses the terms "reimbursed" and "reimbursement". The Statute does not talk about billing. The District Court erred when it found "The statute prohibits **billing** for an LMT's services, thus GEICO is entitled to summary judgment on the unjust enrichment claim as it relates to physical therapy services." (Doc. 292. P. 7)(emphasis added). This is a clear error of law.

concern both equal protection and due process. If the legislature intended to exclude certain licensed health care clinics from collecting pip reimbursements solely because they employ persons with a massage therapy license, then it begs the question what rational basis is there to treat such clinics differently from other licensed clinics that do not employ persons with massage therapy licenses? Such a classification would be arbitrary for there is no rational basis why a licensed clinic hiring unlicensed assistants should be paid, while one who hires licensed massage therapists cannot. Constructions which cast doubt on a statute's constitutionality should be avoided. *See* Industrial Fire & Cas. Ins. Co., v. Kwechin, 447 So.2d 1337, 1339 (Fla. 1983). The District Court erred when it determined Fla. Stat. §627.736(1)(a)(5) excluded LMT's from the PIP regime and misapplied McCarty v. Myers, 125 So. 3d 333 (Fla. 1st DCA 2013). (Doc. 292 P. 9). In McCarty, the court was faced with an appeal on a non-final order temporarily enjoining the Office of Insurance Regulation (OIR) from enforcing the 2012 changes to the PIP law. Id. at 334. The suit was brought by providers including a massage therapist. The court simply found a lack of standing. There is no ruling in McCarty about excluding massage therapists from receiving reimbursement, but rather, a simple restatement of the statute. Id. at 335.  McCarty holds no precedential value whatsoever in this case.

A court cannot rewrite a statute. It has been said time and time again that "even where a court is convinced that the Legislature really meant and intended something not expressed in the phraseology of the act, it will not deem itself authorized to depart from the plain meaning of the language which is free from ambiguity." Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 454 (Fla. 1992)(*quoting* Van Pelt v. Hilliard, 75 Fla. 792 (1918). The proper forum for addressing dissatisfaction with the wording of the statute is the legislature.

Appellants anticipate an argument from GEICO that it would be unreasonable or absurd to limit "license massage therapist" by its literal meaning or to natural persons as this would in effect allow LMT's to circumvent the exclusion in subsection (1)(a)(5) under the guise of an incorporated clinic. It is logical that a statute should not be given a literal interpretation that would yield an absurd result that is obviously unintended by the legislature. *See* State v. Sullivan, 95 Fla. 191 (Fla. 1928). However, the Supreme Court has come "to connect its absurdity analysis to the more forgiving standards of rationality review – meaning that it will enforce a statute's plain meaning as long as it can hypothesize a rational basis to support the textual policy. *See* Maddox v. State, 923 So.2d 442, 452 (Fla. 2006); *See also* Barnhart v. Sigmon Coal Co., 534 U.S. 438, 459 (2002)(*citing and quoting John F. Manning, The Absurdity Doctrine*, 116 Harv. L. Rev. 2387, 2452 n.244 (2003).

There is a rational basis to explain why this application is not absurd. The legislature intended for the phrase "licensed massage therapist" to be literal or limited to natural persons to not penalize a clinic merely because the clinic owner had a massage therapy license or had employees who happened to have massage therapy licenses in conjunction with other licenses, especially where the clinic maintains the licensure status mandated by the statute. Fla. Stat. §627.736(5)(h). In any other application, a claim by a physician owned clinic for example, would not be compensable merely because the physician also holds a massage therapy license or his medical assistants also own massage therapy licenses. Such a result is not only absurd and obviously unintended but is the exact outcome which occurred here, in the District Court.

Thus, based upon time-honored statutory construction analysis, The Right Spinal Clinic, Inc. does not fall within the definition of a licensed massage therapist as it is entitled to reimbursement as an accredited health care clinic, for lawfully rendered services, Fla. Stat. 627.736(1)(a)(1),(2) as a matter of law. The District Court misapplied the law and created harmful error when it found Appellants were automatically not entitled to reimbursement. The next question involves the lawfulness of the treatment rendered, a separate and distinct question to that of reimbursement. A provider may only be reimbursed for lawfully rendered treatment.

**B.**    **An employee of an Accredited Health Care Clinic, working under the direct supervision of a physician, is performing services 'incident to' the physician's license.**

Is an Accredited Health Care Clinic entitled to be reimbursed for medical charges incurred for physiotherapy modalities rendered by employees of its facility who are licensed by the State of Florida pursuant to Fla. Stat. §480.041(2012), which are performed under the direct supervision of a physician?

Florida law requires GEICO to provide PIP coverage to victims of car accidents for reasonable, medically necessary, related and lawfully rendered treatment without regard to fault. Fla. Stat. §§627.730-627.7405. Medical benefits include "services and care that are lawfully provided, supervised, ordered or prescribed." Fla. Stat. §627.736(1)(a)(1),(2). "'Lawful" or "lawfully" [rendered] means in substantial compliance with all relevant applicable criminal, civil and administrative requirements of state and federal law related to the provision of medical services of treatment. Fla. Stat. §627.732(11). An insurer is not required to pay a claim that is "not substantially" compliant with this requirement. Fla. Stat. §627.736(5)(b)(1)(d).

The crux of GEICO's third amended complaint[8] alleges as follows:

_____

[8] Appellants refer to GEICO's third amended complaint as this was ultimately the complaint the District Court granted final judgment on and was the easiest to comprehend as 99% of the superfluous and Interrorum language contained in GEICO's three prior complaints, was removed. However, the main issue – in short form – 'unsupervised massage therapists' was the through line in all four of Geico's complaints. The District Court granted partial summary judgment on GEICO's second amended complaint.  (Doc. 1, Doc. 99, Doc. 249, Doc. 349)

The claims for physical therapy services that the Defendants submitted or caused to be submitted to GEICO between 2017 and September 27, 2021, were deceptive, unfair, false and misleading in that they uniformly misrepresented to GEICO that the physical therapy services were lawfully provided and eligible for PIP reimbursement. In fact, the physical therapy services were not lawfully provided, and were not eligible for PIP reimbursement, because they were performed by unsupervised massage therapists, and because in many cases the bills for services falsely represented that a licensed physician had performed or directly supervised the services.

(Doc. 349 ¶ 23). According to GEICO, there are 3 different types of supervision over "incident to" services such as the physiotherapy modalities rendered at The Right Spinal Clinic, Inc. *See* 42 CFR §410.32[9]. These are described as follows:

(i) *General Supervision* means the procedure is furnished under the physician's overall direction and control, but the physician's presence is not required during the performance of the procedure. Under general supervision, the training of the nonphysician personnel who actually perform the diagnostic procedure and the maintenance of the necessary equipment and supplies are the continuing responsibility of the physician.

(ii) *Direct Supervision* in the office setting means the physician must be present in the office suite and immediately available to furnish assistance and direction throughout the performance of the procedure. It does not mean that the physician must be present in the room when the procedure is performed.

---

[9] This Statute is in relation to Medicare treatment billed for diagnostic services. However, because this is where GEICO attempts to hang its hat, Appellants addressed these definitions in response to GEICO's motion for summary judgment. (Doc. 245 P. 7)

> (iii)  *Personal supervision* means a physician must be in attendance in the room during the performance of the procedure.

*See* 42 CFR §410.32. There are two appellate cases which address supervision of assistants performing physiotherapy modalities under the direct supervision of either a Chiropractic Physician or a Medical Physician. In both cases, the courts granted reimbursement to the medical provider. There are three other appellate cases that address supervision of assistants performing the same modalities with *no supervision*. In all three cases, the court denied reimbursement to the medical provider.

## Star Casualty – September 24, 2020 – Chiropractic Supervision over LMT

In <u>Star Casualty Ins. Co.</u>, the trial court was presented with the following question: Whether the Plaintiff is entitled to be reimbursed for medical charges incurred for physiotherapy modalities rendered by employees of its facility who are licensed by the State of Florida pursuant to Fla. Stat. §480.041 (2012)?. *See* <u>Star Casualty Ins. Co. v. South Florida Pain and Rehabilitation of Hialeah, LLC.</u>, 28 Fla. L. Weekly Supp. 670a (17th Jud. Cir. App. September 24, 2020). The Plaintiff, a Florida Limited Liability Corporation, treated the patient for injuries stemming from an automobile accident. <u>Id</u>.  This treatment consisted of physiotherapy modalities administered by Plaintiff's employees under the direct supervision of Plaintiff's physician. <u>Id.</u> These employees happened to be licensed massage therapists. <u>Id.</u> The

Plaintiff submitted bills to Star Casualty and Star Casualty refused to pay the bills. Id. A lawsuit was filed on behalf of the LLC seeking reimbursement, and in its answer the "[i]nsurer alleged that "Plaintiff [Provider] is not entitled to recovery pursuant to Fla. Stat. §627.736(1)(a)(5)." Summary judgment was granted in favor of the provider and the insurer appealed. Id. On Appeal the court noted that the Provider had billed for the following CPT codes "hot packs (CPT 97010), electrical muscle stimulation (G0283), ultrasound therapy (CPT 97035), manual therapy (CPT 97140), neuromuscular reeducation, (CPT 97112), and therapeutic activities (CPT 97530) (the "modalities"). Id. In addition, the court recognized the Provider's summary judgment was supported by affidavits of two chiropractic physicians and the Provider's Chief Compliance Officer. The CCO testified:

> Fla. Stat. 627.736(1)(a)(5) 2013 does not preclude a medical facility which provides chiropractic services and physiotherapy modalities from submitting bills for therapy provided to patients under the care and guidance of license massage therapists ("LMT"). LMT's have a higher degree of education and training than chiropractic assistants ("CA"), and CA's also oversee therapy provided to patients and charges for those therapy sessions are fully compensable.

Id. at 2. In addition, the supervising chiropractor who directly supervised the physiotherapy modalities and the employees of the facility stated: [N]one of the LMT employees submitted any billing to the Insurer for them to be directly

compensated." Id. at 2. The insurer did not submit any summary judgment evidence

to defeat the supervision of the employees. The court found as follows:

> Here, the LMTs were employed by the Provider. There is
> no evidence before the Court that any LMT is seeking to
> be reimbursed for medical benefits. The services at issue
> were ordered by the treating chiropractor and performed
> under the chiropractor's control and supervision. The
> employees who provided the treatments held massage
> therapist licenses, however there is no indication that
> having a license as a massage therapist was a requirement
> to perform the services. Further, there is no dispute that if
> the LMT's were different employees, such as chiropractic
> assistants, their services would be reimbursable.

Id.[10] The court ruled in favor of the Provider. Id.


## Universal Med. Ctr. – March 17, 2004 – Phys Supervision over Med. Asst.

In Universal Med. Ctr., the trial court was presented with the following question:

> Whether a person defined as a medical assistant under
> section 458.3485, Florida Statutes (2001), but not licensed
> as a physical therapist under chapter 486, Florida Statutes
> (2001), may 'lawfully render' any of the physical therapy
> modalities enumerated in section 486.021(11) Florida
> Statutes (2001) for purposes of qualifying for payment of
> assigned personal injury protection benefits undersection
> 627.736(5)(a) Florida Statutes 2001?[11]

---

[10] As previously stated, The District Court made the same ruling in this case, in its Order on
GEICO's Motion to Amend, stating it was not about the services, but who performed the services
(Doc. 346).

[11] Although this case refers to the 2001 version of Florida Statutes, the same statutes are currently
in effect and any amendments have no bearing regarding the exact argument made in Universal
Med.Ctr., the same analysis would be applicable today in regard to medical assistants under the
2023 version of the same statutes.

The Plaintiff, a Florida corporation, sued State Farm for reimbursement for outstanding medical benefits and the jury in the lower court found in favor of the Provider. State Farm Mut. Auto. Ins. Co. v. Universal Med. Ctr. Of S. Fla., Inc., 881 So.2d 557, 559 (Fla. 3rd DCA 2004). The trial court entered its final judgment but also certified the question to the 3rd District Court of Appeals. On November 19, 2003, the 3rd DCA reversed the trial court order and "concluded that the medical assistants were unauthorized to perform physical therapy and thus State Farm had no obligation to pay for their services." Id. at 558. However, on rehearing and after receiving amicus briefs from "The Florida Chiropractic Association, Inc., Florida Medical Association, Inc., Florida Osteopathic Medical Association, Inc., Florida Podiatric Medical Association, Inc., and the Florida State Massage Therapy Association. Inc." the 3rd DCA granted the Provider's rehearing, withdrew its prior opinion and replaced it with its March 17, 2004, opinion. Id.

In Universal Med. Ctr., the patient was injured in a car accident and sought treatment with the Provider:

> A number of medical assistants, all of whom were unlicensed physical therapists, performed a number of tasks that included the application of hot packs, electrical muscle stimulations, ultrasound therapy treatments, and mechanical massages. Dr. Carranza [a licensed physician] testified that the medical assistants administered the physical therapy while he was present at the medical facility and under his supervision.

Id. at 559. The 3rd DCA analyzed Florida Statute §458.3485(1) which governs the medical assistant profession and found that a medical assistant "is permitted to assist in all aspects of medical practice under the direct supervision and responsibility of a physician…assist with patient examinations or treatments…operate medical equipment." Id. See Fla. Stat. §§458.3485(1), (2), (2)(d). The court further reviewed the statutes regulating physical therapy licensure and the exemption to same contained within Fla. Stat. 486.161(1).[12] The courts analysis is astute and completely analogous with the instant case, to wit:

> No provision of this chapter shall be construed to prohibit any person licensed in this state from using any physical agent as a part of, or incidental to, the lawful practice of her or his profession under the  statutes applicable to the profession of chiropractic physician, podiatric physician, doctor or medicine, massage therapist, nurse, osteopathic physician or surgeon, occupational therapist, or naturopath. (Emphasis added).

> The physical therapy the medical assistants performed in this case fell within the scope of the exemption outlined in section 486.161(1) as physical therapy "incidental to" the practice….The physical therapy modalities performed also fell within the common practice of chiropractic medicine, osteopathic medicine, podiatric medicine, allopathic medicine, and massage therapists.

> Furthermore, whether or not these medical assistants were licensed is of no consequence under section 486.161(1). The health care profession routinely delegates to licensed,

---

[12] The District Court referenced this statute in its July 6, 2022, order, recognized the exemption, and then stated the Appellants did not argue 'incident to' even though 'incident to' presupposes supervision which is the heart of this entire case and both parties' arguments.

as well [as] unlicensed, employees the performance of duties similar to or the same as the duties the medical assistants performed in this case…. The modalities and the use of the medical equipment are also deemed to fall within the ordinary and customary practice of the respective supervising physician.

Finally, we note that for years the insurance companies in this state have been paying for the modalities rendered by medical assistants under personal injury protection benefits. As this case is basically a coverage issue, we may look to the custom and usage in the industry to support our decision today. See Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 36 [*561] (Fla. 2000), citing National Merch. Co. v. United Serv. Auto. Ass'n, 400 So. 2d 526, 530 (Fla. 1st DCA 1981) HN10 (when a court interprets insurance policy language, the court may consider established custom and usage in the insurance industry).

Id. at 560. The Court ruled in favor of the provider. In both cases, the health care clinics were operating lawfully, supervising any assistants, and were entitled to reimbursement under the No Fault Law. The following cases, however, involve a complete lack of supervision.

**Beacon Healthcare – February 26, 2020 – No Supervision – Incident to LMT**

In Beacon the court was presented with two questions:

May a person who is licensed as a massage therapist, but not licensed as a physical therapist, lawfully render physical therapy modalities enumerated in §486.021(11) where such therapy is part of or incidental to the lawful practice of *massage therapy*?

May a health care clinic licensed under Part X chapter 400 receive PIP reimbursements for physical therapy services enumerated in §486.021(11) rendered by a licensed

massage therapist employed by a clinic that is not "massage" as defined by §480.033(3)?

<u>Geico Gen. Ins. Co. v. Beacon Healthcare Ctr. Inc.</u> 298 So.3d 1235, 1236 (Fla. 3rd DCA 2020)(emphasis added). In <u>Beacon</u> the Provider had a medical director and an LMT. The Provider did not have a supervising physician and it would appear the medical director in <u>Beacon</u> *only* performed medical director duties and not duties of a treating physician/supervising physician. The Court in <u>Beacon</u> was asked to address whether physical therapy services rendered 'incident to' the lawful practice *of massage therapy* were lawful. <u>Beacon</u> answered this in the affirmative. <u>Id</u>. at 1238. The court concluded "that a licensed massage therapist can lawfully render physical therapy modalities pursuant to the exception set forth in the Physical Therapy Act, section 486.021(11)." <u>Id</u>. at 1236. However, the court found that these services were not reimbursable. <u>Id.</u> at 1239. Why? Because the court in <u>Beacon</u> was not asked to address whether physical therapy services rendered 'incident to' the lawful practice *of medicine*, i.e., a physician or chiropractic physician's license, was lawful and reimbursable.  The court could not have answered that question, under the facts of <u>Beacon</u>, because the massage therapist in <u>Beacon</u> was performing services unsupervised, to wit:

> The massage therapists were not directly supervised on site by either a licensed physical therapist or by a medical physician when they performed the treatments….The services were performed in these consolidated cases by

> unsupervised massage therapists, regardless of the modalities used.
>
> The plain language of the PIP statute, section 627.736(1)(a)(5) precludes reimbursement to the massage therapists --- or Beacon Healthcare – as these services were erroneously billed as having been directly supervised by a licensed physical therapist or medical doctor.

Id. at 1236, 1238. In Beacon there was zero testimony about the supervision of the Provider's employees. As the services were unsupervised, the Court ruled in favor of the insurer. Id. 1239.

## Southern Owners – May 15, 2020 – No supervision – Massage v. Manual

In Southern the trial court was presented with a narrow issue on summary judgment: "Whether the Florida PIP statute (Florida Statute §627.736) provides for reimbursement for manual therapy that is performed by a licensed massage therapist?" [13]. In Southern, the Insured filed suit for unpaid medical benefits for services rendered by a massage therapist. Southern Owners Inc. Co. v. Hendrickson, 299 So. 3d 524 (Fla. 5th DCA 2020). The record is completely deplete of any evidence regarding supervision, doctors at the facility, or the lawfulness of the treatment. The Court in Southern simply restates that an LMT may not be reimbursed and cites to Beacon. Id. at 525. Southern is not helpful to either party here. Without

---

[13] See Volusia County Court Case No. 2015 11482 CODL, Filing #68685484, entitled "Plaintiff's Motion for Summary Judgment and Response in Opposition to the Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law).

any evidence regarding supervision, the court entered judgment in favor of the insurer. Id.

**Quality Diagnostics  November 5, 2021  No supervision – incident to massage**

In Quality Diagnostics, the court was presented with the same question as in Beacon. The Provider argued at the trial level that the services were reimbursable because the services were 'incident to" the *LMT's practice of massage*. Gov't Emps. Ins. Co. v. Quality Diagnostic Health Care Inc., 2019 WL 11687706, at *2 (S.D. Fla. Dec. 20, 2019)(emphasis added). The provider was attempting to establish that massage therapy services are actually reimbursable under the PIP statute based on the licensure of the massage therapist alone. Id. In rejecting this argument, Judge Martinez very clearly acknowledged that the PT services at issue (which are the same general services at issue in this case), would have been reimbursable to the clinic had they actually been performed under the direct supervision of the doctor.

"Quality's bills for the physical therapy services falsely represented that Keane had directly supervised Viera's performance of the services, which had the effect of making the services appear on their face to be eligible for PIP reimbursement, when in fact they were not." Gov't Emps. Ins. Co. v. Quality Diagnostic Health Care Inc., 2019 WL 11687706, at *io (S.D. Fla. Dec. 20, 2019) (emphasis in the original). The court granted summary judgment because it was undisputed that the services at issue were provided by an unsupervised massage

therapist and because the clinic represented falsely that the services had been provided under the direct supervision of a licensed physician. Id. at *4 ("None of the putative physical therapy services that were billed through Quality to GEICO were performed or supervised by licensed physical therapists or physicians.").

In other words, Judge Martinez granted summary judgment because the undisputed facts established that the massage therapist at Quality Diagnostics was performing, and the clinic had obtained reimbursement for massage therapy. This is what services are when they are provided by an LMT without direct supervision as admitted by GEICO's Corporate Representative.

This critical factual distinction clarifies the specific sentence from the Eleventh Circuit in the Quality Diagnostics opinion affirming Judge Martinez's grant of summary judgment which the District Court relied upon for the proposition that no level of supervision over an LMT by a licensed physician can render services compensable under the PIP statute. See Fla. Stat. § 627. 736(1)(a)(5).

The sentence quoted by the District Court is: "Florida's No-Fault Law precludes reimbursement for physical therapy services provided by massage therapists without regard to the level of supervision." (Doc. 292, pg. 10), *citing* Gov't Emps. Ins. Co. v. Quality Diagnostic Health Care. Inc., No. 21-10297, 2021WL5157535, at *4 (11th Cir. Nov. 5, 2021) (emphasis added).

It is respectfully submitted that this sentence in the Eleventh Circuit's opinion relates solely to the context of the Quality Diagnostic defendant's Rule 59(e) motion, which sought to argue for the first time, that the massage therapy services at issue were compensable because they had been indirectly supervised by a doctor. This novel argument attempted to establish an exception to § 627.736(1)(a)(5) whereby a licensed massage therapist would be empowered to perform physical therapy services under the auspices of their massage therapy license if the services were provided under indirect supervision by a licensed physician.

In finding that Judge Martinez had properly rejected this argument, the Eleventh Circuit in Quality Diagnostic was merely pointing out that purely massage therapy services are non-reimbursable under the PIP statute, regardless of the level of supervision. The Eleventh Circuit in Quality Diagnostic was clearly not referring to physical therapy services which are "incidental to" a licensed physician's practice and performed under the direct supervision of a doctor when it used the words "regardless of the level of supervision." No aspect of the Quality Diagnostic case dealt with physical therapy services that were "incidental to" the practice of a licensed physician and provided under the physician's direct supervision. These words applied to massage therapy services only.

The Eleventh Circuit's clear intent in this regard is confirmed by its footnote to the sentence referencing GEICO v. Beacon Healthcare Ctr., Inc., 298 So. 3d 1235 (Fla. 3d DCA 2020), providing,

> To the extent Defendants characterize Beacon Healthcare Ctr. Inc. as dealing only with physical therapy services provided by entirely unsupervised massage therapists, they are mistaken. The decision in Beacon Healthcare Ctr. Inc. addressed expressly massage therapists who -- like the circumstances involved in this case -- provided physical therapy services with no on-site direct supervision. Id. 298 So. 3d at 1237.

Id. Here, GEICO presented *no medical evidence* to prove the massage therapists were unsupervised. The only items presented by GEICO in support of its motion for summary judgment were: testimony from Victoria Spring, its Corporate Representative, that Dr. Merced's license number was in Box 31 of the HCFA's (Doc. 278 P. 17) which Appellants stipulated to; testimony that the physiotherapy modalities were performed by employees of Right Spinal Clinic, Inc. that held massage therapy licenses (Doc. 278 P. 16) which Appellants stipulated to; and testimony from Victoria Spring, about AHCA documents indicating the times Dr. Merced indicated he would be performing his medical director duties (*not his supervising and primary care duties*)(Doc. 278 P. 20), which Appellants provided to GEICO. GEICO also listed times during Dr. Merced's testimony where he could

not recall specific events on specific days.[14] (Doc. 278. P 21). All these statements do not prove a lack of supervision definitively or that services were falsely represented and are merely conjecture. GEICO did not meet its burden at summary judgment, to "show that there [was] no genuine issue of material fact and that the moving party [was] entitled to a judgment as a matter of law." <u>Rowden v. Target Corp.</u>, 2021 U.S. Dist. LEXIS 116025 at *2-*3(M.D. Fla. 2021) (Mizelle, J.)(quotations/citations omitted).

As Geico did not meet its burden at summary judgment, the burden never shifted to Appellants. *See* <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991). However, Appellants still presented undeniable and uncontroverted medical and lay evidence to definitively prove the employees holding massage therapy licenses, were always directly supervised while performing physiotherapy modalities, and thus billed 'incident to' the physician's licenses.

In accord with <u>Star Casualty</u> and <u>Universal Med. Ctr.</u>, Appellants employees operated under the constant, direct supervision of three medical physicians and one chiropractic physician. (Doc. 245 P. 8-9). The modalities billed were billed by The

---

[14] The District Court was made aware of a serious head injury and the health decline Dr. Merced suffered as the result of a fall in March of 2020. (Doc. 208, P.7). Any fair reading of Dr. Merced's testimony demonstrates that he was still having difficulty with memory and recall. Even so, he was able to recall that he saw both Dr. Silva and Dr. Diamantides at Right Spinal when he went there (he could not recall Dr. Duldulao by name) and testified that Dr. Diamantides was at the facility most of the time. (Doc. 245 P. 9). Dr. Merced eventually died from this brain injury on or about March 6, 2023.

Florida Corporation, Right Spinal Clinic, Inc. and submitted for reimbursement to GEICO. The employees at Right Spinal who held a massage therapy license were performing services which were directly ordered, prescribed and supervised by physicians. (Doc. 245 P 8-9). The Right Spinal Clinic, Inc. is accredited by the Joint Commission and is a fully licensed and active Health Care Clinic. With each and every bill submitted to GEICO, a supervising physician's name was in Box 31 on the HCFA and an additional supervising physician's name was in Box 17 on the HCFA. (Doc. 245 P. 13 - 17). In addition, treatment notes, therapy notes and doctors' examination reports were submitted with each bill. (Doc. (Doc. 245 P. 13 - 17).

Also, Appellants employees held concurrent medical assistant and chiropractic assistant licenses which would independently allow them to perform services, in accord with Universal Med. Ctr. and Star Casualty regardless of whether they held a massage therapist license. (Doc. 294, P.9). GEICO knew this for at least one of the Appellants assistants as the time of filing its second amended complaint and prior to filing its motion for summary judgment (Doc. 211, P.5). GEICO's corporate representative also admitted that the employees of Appellants held additional licenses (Doc. 211, P. 5). The Appellants testified to the additional licenses and provided GEICO with a copy of same. (Doc. 294. P. 9).

Here, Right Spinal did everything it was required to do to comply with Florida Law. It had the Right employees, with the Right licenses, with the Right supervision,

with the Right billing submissions, following the Right law, and conducting itself in the Right way. The District Court erred when it decided to enter judgment in favor of GEICO in light of Right Spinal's clear substantial compliance with relevant Florida law and GEICO's inability to prove any allegation contained within its Complaint. Additionally, the District Court's failure to address supervision was harmful error, resulting in a complete obliteration of state law that Right Spinal is charged to know, understand and follow.

An employee of an Accredited Health Care Clinic working under direct physician supervision, is lawfully rendering services as 'incident to' the physician's license regardless of any other licenses they may hold. As such, the District Court erred in determining that supervision was irrelevant and a genuine issue of material fact did not exist in this regard.

**C.** **The District Court erred in granting GEICO's FDUPTA claim after explicitly finding genuine issues of material fact as to the materiality and knowledge of the unlawful statements relied upon by GEICO.**

GEICO's unjust enrichment claim: declaratory judgment claim and FDUPTA claim are all premised upon the preceding arguments relating to one clause in the PIP statute and the supervision of medical personnel. When analyzing the unjust enrichment claim, the District Court made specific findings of fact, to Wit: The court found it is an issue of fact for the jury to determine whether Dr. Merced's name in

Box 31 was a material representation. (Doc. 292, P. 19); The court found that the issue of Right Spinal's knowledge of the falsity of this representation to be one of fact for the jury. (Doc. 292, P. 24); and the court found that "whether a reasonable insurance company would attach importance" to Dr. Merced's name in Box 31 is also an issue of fact for the jury to determine. (Doc. 292, P. 20-23).

Despite these findings, the court granted summary judgment on GEICO's FDUPTA claim with respect to the physical therapy services on the basis that Appellants "submitted PIP bills for services LMTs performed, while representing that Dr. Merced performed or directly supervised every treatment. And yet, such bills are not entitled to PIP reimbursement and Defendants admit that Dr. Merced was not always present to directly supervise treatments as its billing represents." (Doc. 292, pg. 24.). However, it is clear from the record that Dr. Merced was not the only physician at The Right Spinal Clinic and other physicians supervised in addition to Dr. Merced.

It is respectfully submitted that these findings render the Court's grant of summary judgment as to the FDUTPA claim a manifest error of fact *and* law. The mistake of fact relates to the additional qualifications of the LMTs. The mistake of law is the Court's novel holding that a FDUTPA claim can be proven by *any* statement in the context of a consumer transaction which later turns out to be

technically false, *regardless* of its materiality, *regardless* of the knowledge of the Defendant, and *regardless* of the statement's import to the transaction at issue.

This is not harmless error. Had this case been presented to a jury, the jury could determine that Right Spinal did not make a single material misrepresentation in its bills, that any technical falsity relating to Dr. Merced's name in Box 31 was not knowingly and that the name of the doctor in Box 31 was totally unimportant to any reasonable insurance company. If this jury result were to occur, GEICO will have been granted summary judgment on a FDUTPA claim based on an immaterial, innocent, and wholly unimportant statement that caused GEICO no actual damages. This is clearly not the purpose of the FDUTPA statute.

"A deceptive act or practice is one that is likely to mislead consumers and an unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *See* State Farm Mut. Auto. Ins. Co. v. Performance Orthopedics & Neurosurgery. LLC, 315 F. Supp. 3d 1291, 1300 (S.D. Fla. 2018). "While proof of actual reliance is unnecessary, the first element of a FDUTPA claim is only satisfied by evaluating a reasonable consumer in the same circumstances as plaintiff. The modification of 'acting reasonably' by 'in the same circumstances' indicates a hybrid standard that may be objectively established as to mindset but subjectively established as to context." *See* Maor v. Dollar Thrifty Auto. Grp . Inc., 2018 WL 4698512, at *6 (S.D.

Fla. Sept. 30, 2018), *citing* Deere Constr. v. Cemex Constr. Materials Florida. LLC, 2016 WL 8542540, *3 (S.D. Fla. Dec. 1, 2016); *and In Re Motions to Certify Classes Against Court Reporting Firms for Charges Relating to Word Indices*, 715 F.Supp.2d 1265, 1282 (S.D. Fla. 2010).

In order to prove the causation element of a FDUTPA claim, a plaintiff must prove that a "reasonably objective person in the same circumstances as plaintiff would have been deceived." Lombardo v. Johnson & Johnson Consumer Cos., 124 F.Supp.3d 1283, 1290 (S.D. Fla. Aug. 12, 2015).

Before the District Court, there was–at the very least–a genuine dispute of fact as to whether it is reasonably objective for a person to be deceived by an immaterial statement, which is, by definition, "of no substantial consequence; unimportant." See Merriam-Webster online dictionary.

Should the Court's Order granting summary judgment on GEICO's FDUTPA claim stand, however, wholly immaterial statements, regardless of the Defendant's knowledge of their falsity and regardless of their importance to the transaction, would hereafter be sufficient to establish a "deceptive" practice sufficient to recover damages under FDUTPA.

It is respectfully submitted that having found it to be a question of fact for the jury as to whether Dr. Merced's name in Box 31 was a material and knowing misrepresentation, it must also therefore be an issue of fact for the jury whether a

reasonable insurance company in the same circumstances would have been deceived by the same alleged misrepresentation. This issue of fact precluded summary judgment on GEICO's FDUTPA claim and Appellant seeks reversal of this decision.

## V. <u>CONCLUSION</u>

In sum, when the District Court based its entire opinion on one sentence in one statute, it misapplied an entire body of law allowing reimbursement to Appellants. The questions of supervision, incidental to, lawfulness, and the materiality of any alleged misrepresentation are all questions of fact for the Jury. These errors are not harmless errors. These errors resulted in a Judgment against Appellants for services that were lawfully rendered, provided by licensed massage therapists, chiropractic assistants and medical assistants; that were directly supervised by medical and chiropractic physicians. A plethora of evidence existed to deny GEICO's summary judgment. Had Appellant's been able to go to a jury on this issue, Appellants would have argued their affirmative defenses, specifically unclean hands *inter alia* as GEICO did nothing to rectify any alleged lack of information over the course of 4 years. In addition, GEICO paid nearly $300,000 to The Right Spinal Clinic, Inc. on outstanding bills for the specific patients in this complaint, and dates of service in this complaint and CPT codes identified in this complaint!

Appellants request the Final Judgment be vacated and the preceding partial summary judgment be vacated. and remand of this case back to the District Court to allow the issues contained within GEICO's third amended complaint to be presented to the Jury.

**WHEREFORE**, for the foregoing reasons, Appellant asks this Court to remand to the District Court the matter for continued consideration of Appellant's third amended complaint and allow Appellant's to present their case to a jury.

Respectfully submitted,

Dated: September 4, 2023          _____/s/Kelly ARIAS_____
**KELLY ARIAS**
*Counsel for Appellants/Defendants*

**Certification of Volume and Word Count**

Undersigned certifies that Appellant's Initial Brief complies with the type-volume limitations of F.R.A.P. 32(a)(7)(B) because it contains **12,032** words, excluding the parts of the brief exempted by F.R.A.P. 32(f), as calculated by the word-counting feature of Microsoft Office 2010.

Undersigned certifies that Appellant's Initial Brief complies with the typeface requirements of F.R.A.P. 32(a)(5) and the type style requirements of F.R.A.P. 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated: September 4, 2023          _____/s/Kelly ARIAS_____
                                      **KELLY ARIAS**
                                      ***Counsel for Appellants/Defendants***

## CERTIFICATE of SERVICE

I, **KELLY ARIAS**, hereby certify that a copy of Appellant's ***INITIAL BRIEF*** was on **SEPTEMBER 4, 2023**, was served via the CM-ECF system upon counsel for Appellees/Plaintiffs, Appellees Government Employees Ins. Co., et al.,

> **RIVKIN RADLER, LLP**
> **Riverplace Tower 1301**
> **Riverplace Blvd.**
> **Suite 1000**
> **Jacksonville, FL 32207**
> **Phone: (904) 791-8948**
> **Facsimile: (904) 598-6225**
> **Max.Gershenoff@rivkin.com**
> **John.Marino@rivkin.com**
> **Kristen.Wenger@rivkin.com**
> **Lindsey.Trowell@rivkin.com**
> **Yonatan.Bernstein@rivkin.com**

> _____/s/Kelly ARIAS_____
> **KELLY ARIAS**
> **FBN: 0013980**
> **The Evolution Law Group, PA**
> **2700 Glades Circle**
> **Suite 145**
> **Weston, FL 33327**
> **Tel. (954) 840-6665**
> **Fax: (954) 840-6997**
> **E-mail: kelly@theevolutionlawgroup.com**